UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
Jennifer Beare and Richard Wright,

                                Plaintiffs,        **RULING ON SUMMARY**
                                                          **JUDGMENT**
        -against-                                   Case No. 07-cv-3391 (TLM)

Zsa Zsa Millington,

                                Defendant
--------------------------------------------------------------- X

## PROLOGUE

As a result of the lengthy and convoluted history of this case, the undersigned felt that a short section, a prologue if you would, in advance of the Court's ruling would be of assistance in understanding this Court's ruling and its rational and reasons therefore. This missive is not intended to repeat what is contained in the body of the ruling that follows, but rather is intended to set the stage for the ruling.

This case arises from the transfer of plaintiff-decedent Leatrice Harris' ("Harris") real property located at 225-28 109 Avenue, Queens Village, NY, 11429 (the "Property") from Harris to defendant Zsa Zsa Millington ("Millington") in July 2007. Plaintiff has asserted causes of action for (1) conversion, (2) fraud, (3) unjust enrichment, (4) breach of fiduciary duty, (5) quiet title, (6) reformation, (7) constructive trust, and (8) punitive damages. [Fifth Am. Compl., Rec. Doc. 127].

On August 15, 2007, while Harris was still alive, the initial Complaint was filed in her name against defendant Millington. [Rec. Doc. 1]. Plaintiff's First Amended Complaint was filed on October 9, 2007. [Rec. Doc. 8]. Following Harris' death on October 28, 2007 [*See* Rec. Doc. 15], her daughter Jennifer Beare ("Beare") was appointed administrator of Harris' estate and

1

Richard Wright ("Wright") was appointed plaintiff administrator C.T.A. pursuant to N.Y. Surr. Ct. Proc. Act § 707(c). On March 17, 2008, the Court granted Beare's motion to be substituted as plaintiff in her capacity as administrator and Wright in his capacity as administrator C.T.A. of Harris' estate. [Rec. Doc. 21]. The Court notes that Beare and Millington share a long and, at times, contentious relationship pre-dating this lawsuit that appears to stem from disagreements concerning the closeness of their respective relationships with Harris. [*See, e.g.,* Beare Aff., Rec. Doc. 184-18 at 2-11]. After being substituted as plaintiff administrator, Beare filed a Third Amended Complaint[1] on August 15, 2008. [Rec. Doc. 31]. On July 6, 2011, plaintiff filed a Fourth Amended Complaint [Rec. Doc. 116], which included newly asserted allegations concerning the alleged transfer of Harris' Florida property to Millington, among others. Based on defendant's objections [Rec. Doc. 125], on October 19, 2011 plaintiff filed a Fifth Amended Complaint [Rec. Docs. 126 and 127], which omitted the newly-asserted allegations that had been included in the Fourth Amended Complaint.

Defendant was initially represented by attorney Alfred Polizzotto, whom the Court allowed to withdraw on September 18, 2008. [Rec. Doc. 34]. Subsequently, defendant was represented by attorney Paul Golden, whom the Court also allowed to withdraw on June 19, 2013. [Rec. Doc. 163]. Since June 19, 2013, defendant Millington has been appearing pro se. [*See* Rec. Doc. 176].

Defendant's Motion for Summary Judgment was filed on September 19, 2013 [Rec. Doc. 168] and plaintiff's Opposition thereto was filed on October 2, 2013 [Rec. Doc. 175]. On November 21, 2013, the Court conducted a hearing during which it sanctioned plaintiff's former

---

[1] Plaintiff's "Third Amended Complaint," [Rec. Doc. 31] was actually the second amended complaint filed in the case, although it was the third version of the complaint filed, with the original Complaint [Rec. Doc. 1] and the First Amended Complaint [Rec. Doc. 8] being the first two. Plaintiff did not actually file a "Second Amended Complaint," but rather continued numbering her subsequent complaints sequentially from the third amended complaint filed. Thus, plaintiff's current iteration is styled as her "Fifth Amended Complaint."

2

attorney, Wright, for multiple failures to comply with Court orders. [Rec. Doc. 191]. As part of the Court's sanctions, Wright was not allowed to continue in his dual roles in the litigation and was required to withdraw as attorney of record, although he was allowed to maintain his party representative status as administrator C.T.A. pursuant to N.Y. Surr. Ct. Proc. Act § 707(c). [Rec. Doc. 191]. On December 10, 2013, Wright withdrew as attorney of record and plaintiff's current attorney, Paul Shneyer ("Shneyer"), entered his appearance. [Rec. Docs. 203, 205, and 206].

On December 12, 2013, after Shneyer was substituted as plaintiff's counsel, the Court conducted a telephone conference [Rec. Doc. 208], during which it extended two of plaintiff's deadlines and granted plaintiff permission to file a Motion to Amend the Complaint, Allow Additional Discovery, and Amend the Pretrial Order to add Witnesses and Exhibits, which plaintiff's attorney Shneyer then filed on January 10, 2014, [Rec. Doc. 222]. On February 24, 2014, the Court granted plaintiff's request to add her former attorney Wright as a witness and to add any evidence already exchanged during discovery to its exhibit list, but denied plaintiff's Motion to Amend in all other respects. [Rec. Doc. 235].[2] The Court allowed plaintiff's attorney to file his Motion to Amend, requesting additional relief, and deferred ruling on the present motion for summary judgment until after deciding plaintiff's Motion to Amend in order to give plaintiff's newly substituted counsel Shneyer an opportunity to become acquainted with the full record of the case and request any additional relief he deemed necessary or appropriate.

I. INTRODUCTION

Before the Court are pro se defendant Millington's Motion for Summary Judgment and Memorandum of Law in Support [Rec. Doc. 168][3], plaintiff's Opposition to Defendant's Motion

---
[2] Plaintiff's Fifth Amended Complaint, filed on October 19, 2011 [Rec. Doc. 127], remains the operative complaint in this action and is therefore the complaint the Court will refer to throughout this Ruling.
[3] Defendant's Motion and Memorandum in Support were filed under the same docket number [Rec. Doc. 168], while her supporting exhibits were filed separately [Rec. Doc. 169].

for Summary Judgment [Rec. Doc. 175][4], and defendant's Response to Plaintiff's Opposition [Rec. Doc. 190]. For the reasons set forth below, defendant's Motion for Summary Judgment will be granted as to all of plaintiff's claims and denied with respect to defendant's counterclaims, asserted by defendant for the first time in her Motion for Summary Judgment, based on plaintiff's alleged litigation misconduct.

## II. FACTUAL BACKGROUND

### a. Rule 56 Statements

Pursuant to Local Rule 56.1(a), defendant Millington, as the moving party, submitted a statement of allegedly undisputed facts. [Rec. Doc. 168 at 23-41]. Plaintiff failed to respond with "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," as required by Local Rule 56.1(b). Rather, plaintiff's Opposition includes a section entitled "Factual Background," setting forth several independent factual allegations. [Rec. Doc. 175 at 1-17]. Pursuant to Local Rule 56.1(d), defendant has provided a citation for almost every factual allegation in her Rule 56 Statement; plaintiff has provided citations for less than two thirds of her asserted undisputed facts.

Defendant argues that the Court must accept all her allegations as true because of plaintiff's failure to respond properly. [Rec. Doc. 190 at 12-13]. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," may review the record independently, and should disregard factual assertions that are unsupported by the record regardless of whether the assertion was opposed by the non-moving party. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). The Court has thoroughly reviewed the evidence cited in the parties' factual statements. Despite plaintiff's failure to properly respond to defendant's proposed statement of undisputed facts, the Court has only

---

[4] Plaintiff's supporting exhibits were also filed separately. [Rec. Doc. 184].

4

accepted as true defendant's properly supported factual allegations that are not contradicted by plaintiff's properly supported factual allegations.[5] The Court views disputed facts in the light most favorable to the non-moving plaintiff.

### b. Statement of Facts

On July 2, 2007, Harris signed a quitclaim deed (the "Deed") conveying the real property located at 225-28 109 Avenue, Queens Village, NY, 11429 (the "Property") to defendant Millington for "one dollar and other valuable consideration." [Rec. Doc. 184-1]. The Deed was executed before and duly acknowledged by notary public Frank M. Dix and was later filed in the appropriate conveyance records, transferring record title of the Property to defendant.[6]

The parties dispute Harris' physical condition at the time the Deed was signed, although the fact that Harris herself signed the Deed is not in dispute.[7] [*See* Rec. Doc. 175 ¶¶ 7, 95]. Defendant testified in her deposition that although Harris was in bed when she signed the Deed, she was in good physical condition on the day she signed the Deed; defendant testified that Harris "was by the kitchen area [when notary Frank Dix arrived] and then she headed to the small bedroom" and got into bed. [Millington Dep., Rec. Doc. 184-7 at 18-19]. Plaintiff points to evidence (1) that Harris was resting in bed during the middle of the day and (2) that Harris was admitted to the hospital for a "routine biopsy examination" two days later, on July 4, 2007, at

---

[5] In conjunction with plaintiff's Opposition, plaintiff's former attorney Wright provided the Court with more than 1,200 pages of alleged supporting documents, but referenced only a fraction of those pages by page number. Nonetheless, the Court has reviewed all the evidence offered by plaintiff, as well as all evidence offered by defendant, in order to ensure that the record supports its findings, but has not scoured the voluminous record for any possible arguments not raised by the plaintiff. It was the plaintiff's duty to set forth evidence showing issues of disputed material fact in opposition to defendant's thoroughly argued and supported motion for summary judgment and the Court will not step in to advocate for plaintiff where her attorney has failed to do so.

[6] Plaintiff asserts that "the description of the subject Quit Claim deed was transposed on the alleged Quit Claim deed subsequent to the signing," [Rec. Doc. 175 ¶¶ 36-37], but provides no support for this proposition. Other than plaintiff's mere allegations, there is nothing in the record to support that the Deed was altered after it was signed and notarized on July 2, 2007. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (stating that a mere allegation is insufficient to defeat summary judgment).

[7] Although plaintiff asserts that Harris did not know the nature of the documents she was signing, [Rec. Doc. 175 ¶¶ 81, 83], she provides absolutely no support for the factual allegation that Harris believed she was signing a document other than the Deed and does not assert that anyone other than Harris signed her name to the Deed.

which time she was experiencing symptoms of fatigue and dehydration, and asserts that Harris was not in good physical condition on July 2, 2007. [Rec. Doc. 175 ¶¶ 5, 31-34; *see also* Rec. Doc. 169 at 40-45; Rec. Doc. 184-7 at 19; Rec. Doc. 184-17].

Both parties provide lengthy factual assertions that are irrelevant to the motion for summary judgment, and thus will not be discussed in this ruling. Defendant also provides factual assertions that point to the lack of evidence for certain of plaintiff's claims, which will be discussed in conjunction with the particular claims.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate only when the record reflects that "there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering a motion for summary judgment "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Id.* In making this determination, the trial court "may not make credibility determinations or weigh the evidence." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (internal citations and quotation marks omitted). Rather, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Loeffler v. Staten Island Univ. Hosp.* 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). In situations where "the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." *Ginsberg v. Healy Car & Truck Leasing, Inc.*, 189 F.3d 268,

270 (2d Cir. 1999). Once the moving party has satisfied its burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (stating that a non-moving party must point to more than the "'mere existence of a scintilla of evidence'" in order to defeat a motion for summary judgment (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))). The non-moving party may not establish that there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson*, 477 U.S. at 248-49; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Gannon v. United Parcel Service*, 529 F. App'x 102, 103 (2d Cir. 2013). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no issue of fact is presented and the movant is entitled to judgment as a matter of law, the court is required to render the judgment as prayed for. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations and internal quotation marks omitted).

However, as noted by the Court on the record on several occasions, while possible, it would have been difficult for a lay person to produce the thorough and timely filings submitted by the pro se defendant without legal assistance. [*See, e.g.*, Trans., 6:7-9, Oct. 3, 2013, Rec. Doc. 212]. Due to the high quality of pro se defendant Millington's submissions, the Court has not applied the typical liberal pro se standard of construction to her filings and has thus evaluated the pro se defendant's Motion for Summary Judgment in the same manner as it would a motion submitted by an attorney admitted to practice before the Court.

## IV. DISCUSSION

### a. Conversion

Defendant argues that she is entitled to summary judgment on plaintiff's conversion claim because (1) New York does not recognize a cause of action for conversion of real property and (2) plaintiff has produced no evidence that defendant asserted the control required for a conversion claim over any specific item of Harris' personal property. [Rec. Doc. 168 at 43-48]. Plaintiff's Fifth Amended Complaint [Rec. Doc. 127 ¶ 29-32] as well as her Opposition [Rec. Doc. 175 ¶ 88] assert that plaintiff may maintain a claim for conversion of both real and personal property, but neither filing specifically addresses defendant's summary judgment argument that a conversion claim cannot be brought with respect to real property. The only items of personal property identified by plaintiff in connection to the conversion claim are the "incomes and funds generated from the real property" [Rec. Doc. 127 ¶ 33] and Harris' passport [Rec. Doc. 175 ¶ 88].

In New York, "[a]n action sounding in conversion does not lie where the property involved is real property." *Garelick v. Carmel*, 529 N.Y.S.2d 126, 128 (2d Dep't 1988) (citing *Boll v. Town of Kinderhook*, 472 N.Y.S.2d 496, 498 (3d Dep't 1984)); *see also B & C Realty,*

*Co. v. 159 Emmut Props. LLC*, 966 N.Y.S.2d 402, 405 (1st Dep't 2013) (stating that "a party may not sustain a claim for conversion of real property"). Thus, to the extent plaintiff's conversion claim is premised on defendant's alleged conversion of Harris' real property, defendant's motion for summary judgment will be granted.

In order to state a cause of action for conversion of personal property, "the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question." *Castaldi v. 39 Winfield Assocs.*, 820 N.Y.S.2d 279, 280 (2d Dep't 2006); *see also Gen. Sewer Serv. Of Richmond Cnty., Inc. v. SI Bank & Trust*, 101268, 2008 WL 4559884, at *2 (N.Y. Sup. Ct. Sep. 4, 2008). In order to prevail, a plaintiff must "identify the property allegedly converted." *Messiah's Covenant Cmty. Church v. Weinbaum*, 905 N.Y.S.2d 209, 212 (2d Dep't 2010). Here, the only items of personal property identified by plaintiff in connection to the conversion claim are the "incomes and funds generated from the real property" [Rec. Doc. 127 ¶ 33] and Harris' passport [Rec. Doc. 175 ¶ 88]. Plaintiff alleged in her Fifth Amended Complaint that "defendant has used for her own ends all the appropriated and converted incomes and funds generated from the real property," [Rec. Doc. 127 ¶ 33], but did not make reference to such "incomes and funds" in her Opposition and has failed to produce any competent summary judgment evidence demonstrating the existence of such funds. As to Harris' passport, defendant asserts that plaintiff can produce no evidence that defendant exercised control over Harris' passport or other personal papers.[8] [Rec. Doc. 168 at 48-49].[9] Plaintiff responds by summarily

---

[8] Harris' personal papers other than her passport, such as her birth certificate and health insurance card, although not mentioned specifically in plaintiff's Opposition, were previously discussed in this case because of plaintiff's attorney Wright's attempt to compel defendant to turn over such documents, which Wright asserted were in defendant's possession, prior to Harris' death. [*See* Rec. Doc. 4].

[9] By way of example, defendant points to the October 11, 2007 hearing testimonies of plaintiff Beare and plaintiff's witnesses Monica Carmichael and Daryl Birch, in which each admitted that they had never seen defendant in possession of Harris' passport or other personal papers. [Rec. Doc. 169 at 34-38].

stating that the "passport and other personal property were removed from the real property at the time the defendant was present there," [Rec. Doc. 175 ¶ 66], and "it is justif[iable] to surmise that the missing personal property . . . [is] in the possession of the defendant," [Rec. Doc. 175 ¶ 92].[10] Plaintiff has produced no competent summary judgment evidence in support of her claim that Harris' passport was removed while defendant was at the Property, nor has she explained why the condition of Harris' home is relevant to her conversion claim.

In deciding a motion for summary judgment, a court resolves all factual disputes in favor of the non-moving party, but cannot and will not allow a plaintiff to defeat summary judgment with conclusory statements and unsubstantiated leaps in logic. *See Anderson*, 477 U.S. at 248-49. Plaintiff would bear the burden of proof on each of her claims at trial; she cannot defeat summary judgment through mere allegations. *See id.; Gannon v. United Parcel Service*, 529 F. App'x 102, 103 (2d Cir. 2013). Finding that plaintiff has failed to produce even a scintilla of evidence indicating that defendant exercised control of any kind over a specific item of Harris' personal property, much less sufficient control so as to allow a reasonable jury to find conversion, the Court will grant defendant's motion for summary judgment on plaintiff's conversion claim.

**b. Fraud**

"In an action to recover damages for fraud, the plaintiff must prove [(1)] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [(2)] made for the purpose of inducing the other party to rely upon it, [(3)] justifiable reliance of the other party on the misrepresentation or material omission, and [(4)] injury." *Lama Holding Co. v. Smith Barney Inc.*, 646 N.Y.S.2d 76, 80 (N.Y. App. 1996). New York requires

---

[10] Plaintiff does not explain why the "disheveled" condition of Harris' home could lead a reasonable juror to conclude that defendant took Harris' passport.

that "[w]here a cause of action . . . is based upon . . . fraud . . . the circumstances constituting the wrong shall be stated in detail." N.Y. C.P.L.R. § 3016 (McKinney). A plaintiff may not rely solely upon the existence of the result of the alleged fraud, here Harris' signing of the Deed, to support a claim of fraud. *See Banker v. Banker*, No, 2004-207, 2009 WL 1018630, at *3 (N.Y. Sup. Ct. Jan. 26, 2009) (finding that evidence that elderly woman had signed over real property to defendant was not sufficient to prove fraud without further evidence of a specific misrepresentation).

Defendant argues that plaintiff has failed to allege a misrepresentation or omission of fact sufficient to support a claim of fraud. [Rec. Doc. 168 at 13, 52-62]. In opposition, plaintiff alleges that (1) the Deed did not contain a property description at the time Harris signed it; (2) defendant misrepresented the nature of the document(s) Harris signed on July 2, 2007; and (3) defendant misrepresented her status by telling Harris she was a doctor and by representing that the Deed was actually a document(s) related to Harris' upcoming medical procedure.[11] [Rec. Doc. 175 ¶ 95-105]. Plaintiff provides not even a *soupçon* of evidence in support of her allegations that the property description was placed on the Deed subsequent to Harris' signing of the Deed or that defendant lied about the nature of the documents Harris signed on July 2, 2007. Plaintiff provides minimal support for her allegation that Harris believed defendant was a doctor by producing plaintiff Beare's affidavit stating that Harris, Beare's mother, sometimes referred to defendant as a doctor. [Rec. Doc. 175 ¶ 79; Beare Aff., Rec. Doc. 184-18 ¶ 9].[12] However, Plaintiff has adduced no competent summary judgment evidence, as would be necessary to meet

---

[11] Plaintiff alleges both that defendant misrepresented the nature of the document(s) [Rec. Doc. 175 ¶ 95] and that she told Harris the Deed was a medical document(s). [Rec. Doc. 175 ¶¶ 96, 100, 103]. Because it is unclear whether plaintiff intended these statements to be two separate, albeit potentially incompatible, allegations or restatements of a single allegation, the Court will address each of them in turn.

[12] Plaintiff Beare's further statements, contained in her affidavit, that Harris believed defendant would help her at medical appointments and provide medical advice are mere allegations and do not constitute competent summary judgment evidence; plaintiff cannot defeat summary judgment through mere allegations.

11

the first three elements for fraud in New York, indicating (1) that defendant intentionally misrepresented that she was a doctor; (2) that such alleged misrepresentation was made in order to induce Harris's reliance; or (3) that it was justifiable for Harris to rely on such alleged misrepresentation.

Furthermore, even were the Court to accept, for purposes of this motion, plaintiff's unsupported allegations that defendant lied by telling Harris she was a doctor and that Harris believed defendant was a doctor, plaintiff's fraud claim must nonetheless fail as plaintiff has not provided any evidence to raise a genuine issue of fact as to the fourth element of a fraud claim, i.e. that the alleged injury arising from Harris' signing the Deed could have arisen from such misrepresentation. Plaintiff alleges, but provides no evidence by which a reasonable jury could infer that Harris believed defendant was *her* doctor or had ever brought Harris medical documents to sign, much less that defendant did so on July 2, 2007. The Court will grant summary judgment in favor of defendant on plaintiff's fraud claim.

### c. Unjust Enrichment

Unjust enrichment "is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned." *Fernbach, LLC v. Capital & Guarantee Inc.*, 08CIV1265 (SHS), 2009 WL 2474691, at *3 (S.D.N.Y. Aug. 12, 2009). It is a quasi-contract claim that "the law creates in the absence of any agreement" between the parties governing the subject of the dispute. *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC.*, 631 F.3d 42, 54 (2d Cir. 2011) (quoting *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. App. 2005)). Although courts will permit a plaintiff to plead alternative theories of breach of contract or unjust enrichment if there is a dispute as to the agreement's validity or enforceability, a plaintiff's "failure to allege that the contracts at issue are invalid or unenforceable precludes it

. . . from seeking quasi-contractual recovery for events arising out of the same subject matter." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (applying New York law).

Defendant argues that plaintiff's unjust enrichment claim is barred because there is an enforceable contract, the Deed, governing the subject matter of the dispute. [Rec. Doc. 168 at 66]. Plaintiff does not respond to defendant's argument in her Opposition, but rather argues the hornbook elements of an unjust enrichment claim without citing the Court to any evidence, documentary or testamentary, to challenge the validity of the Deed. Assuming arguendo that there is a triable issue of fact as to the elements of her unjust enrichment claim, plaintiff is still unable to bring this quasi-contract claim in the face of an unchallenged and presumably valid[13] contract governing the subject matter of the dispute.[14] The Court will grant summary judgment in favor of defendant on plaintiff's unjust enrichment claim.

**d. Breach of Fiduciary Duty**

In order to establish a claim for breach of fiduciary duty, plaintiff must first establish the existence of a fiduciary relationship, and thus duty. In New York,

> a fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another. Whether one party is a fiduciary of another depends on the relationship between the parties. For example, the attorney/client and doctor/patient relationships.

---

[13] A deed that is signed, notarized, and properly recorded is presumed valid; competency is presumed and a party challenging a deed based on incompetency "bears the burden of proving incompetence." *Feiden v. Feiden*, 151 A.D. 2d 889, 890 (3d Dep't 1989); *see also Rudolf Nureyev Dance Found. v. Noureeva-Francois*, 7 F. Supp. 2d 402, 416 (S.D.N.Y. 1998).

[14] If the Court accepted all of plaintiff's asserted, but unsupported, facts as true, which it cannot and will not do, it would be left with a dizzying array of contradictory theories – put forth by plaintiff – regarding the existence of the contract and Harris' intent at the time she signed the Deed (or other documents) on July 2, 2007. The Court will not transform these detached, disjointed, unsupported and contradictory allegations into an argument attacking the validity of the Deed.

13

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995). Defendant asserts that plaintiff has not sufficiently pled a relationship of trust between defendant and Harris that could result in a fiduciary relationship and thus plaintiff cannot sustain a claim for breach of fiduciary duty. [Rec. Doc. 168 at 72-73]. Plaintiff counter-argues that a relationship of trust can be found because (1) Harris had known defendant since defendant was a child and (2) Harris believed defendant was a doctor. [Rec. Doc. 175 ¶ 112-13]. The length of time that two individuals have known one another, without more, does not result in a fiduciary relationship and plaintiff has produced no competent summary judgment evidence or legal support to indicate why a reasonable jury could find a relationship of trust based on defendant's and Harris' longstanding relationship alone. As to plaintiff's second counter-argument, while Harris may have had a fiduciary relationship with defendant had Harris actually believed that defendant was *her* doctor, the Court finds that plaintiff has, at best, produced evidence showing that Harris may have believed defendant was *a* doctor, but has produced no evidence that this belief, if it existed, played any part in Harris' decision to sign the Deed. *See infra* § IV(b) at 9-10. Even were the Court to accept for the purposes of this motion that Harris believed defendant was a doctor, there are no grounds by which a reasonable jury could find that this belief resulted in a fiduciary relationship. Common sense dictates that doctors do not have fiduciary relationships with every friend or acquaintance just because the friend or acquaintance knows that person is a doctor. The Court will grant summary judgment to defendant on plaintiff's breach of fiduciary duty claim.

**e. Quiet Title**

In order to prevail on a quiet title claim in New York, a plaintiff bears the "burden of establishing good title in itself." *LaSala v. Terstiege*, 713 N.Y.S.2d 767, 768 (2d Dep't 2000);

*see also* N.Y. REAL PROP. ACTS § 1515 (McKinney) (stating that a quiet title cause of action must set forth facts showing the "plaintiff's estate or interest in the real property"). A plaintiff must assert a "current interest in the Property." *Neely v. RMS Residential Mortg. Solution, L.L.C.*, 12-CV-1523 (JS)(AKT), 2013 WL 752636, at *14 (E.D.N.Y. Feb. 26, 2013).

Defendant argues that plaintiff cannot maintain a quiet title action because she has not asserted a present interest in the property. [Rec. Doc. 168 at 73-74]. Plaintiff apparently acknowledges this point, stating that "defendant acquired title to the Queens Village real property by improper means," and arguing that the Court should not allow "the Queens Village real property to be *continued* titled in the name of defendant." [Rec. Doc. 175 ¶ 18 (emphasis added)]. Plaintiff does not dispute the fact that defendant has acquired title. Most importantly, plaintiff claims no present interest in the Property. As such, plaintiff may not maintain a quiet title action and the Court will therefore grant summary judgment in favor of defendant on plaintiff's quiet title claim.

**f. Reformation**

Under New York law, "'mutual mistake or fraud[15] may furnish the basis for reforming a written agreement.'" *Princeton Restoration Corp. v. Int'l Fid. Ins. Co.*, 338 F. Supp. 2d 391, 394-95 (quoting *Chimart Assocs. v. Paul*, 498 N.Y.S.2d 344, 346-47 (1986)). Somewhat confusingly, although plaintiff alleges a separate cause of action for fraud, her reformation claim appears to rest on an allegation of mutual mistake, stating in her Fifth Amended Complaint that the "deed does not reflect the true intention of the parties." [Rec. Doc. 127 ¶ 50]. In order to prevail on a reformation claim premised on mutual mistake, a plaintiff must show "not only that mistake . . . exists, but what was really agreed upon between the parties." *George Backer Mgmt.*

---

[15] To the extent plaintiff's reformation claim rests on allegations of fraud, plaintiff's claim will be dismissed as a result of the Court's intention to grant summary judgment in defendant's favor on plaintiff's fraud claim. *See infra* § IV(b) at 8-10.

*Corp. v. Acme Quilting Co.*, 413 N.Y.S.2d 135, 139 (N.Y. App. 1978) (citing Williston, Contracts (3d ed.) §§ 1548, 1597).

Defendant alleges that plaintiff cannot show that the Deed was the product of mutual mistake, nor has plaintiff presented any evidence of the alleged true intent of the agreement between Harris and defendant other than what is evidenced on the face of the Deed. [Rec. Doc. 168 at 75]. Plaintiff does not specifically respond to defendant's argument, but rather boldly asserts that "as a matter of equity and fairness" she is entitled to reformation. [Rec. Doc. 175 ¶ 119]. At no point in plaintiff's Fifth Amended Complaint or in her Opposition to defendant's Motion for Summary Judgment does she assert, much less provide any support for the alleged true intent of Harris and defendant in executing the Deed other than what is found on the face of the Deed. Finding that plaintiff has produced not a scintilla of evidence indicating a genuine issue of fact as to whether there was an intended agreement between Harris and defendant that differed from that memorialized by the Deed, plaintiff cannot sustain a cause of action for reformation and the Court will grant summary judgment in favor of defendant on plaintiff's reformation claim.

### g. Constructive Trust

A constructive trust is an equitable remedy imposed to prevent unjust enrichment. *See O'Brien v. Dalessandro*, 843 N.Y.S.2d 348, 349 (2d Dep't 2007). "Under New York law, the requisite elements of a constructive trust are: '(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.'" *Melnick v. Press*, 809 F. Supp. 2d 43, 69 (E.D.N.Y. 2011) (quoting *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 352 (2d Cir.1992) (collecting cases)).

Defendant argues that plaintiff has failed to assert the requisite elements of a constructive trust, specifically the existence of a promise made to induce the transfer. [Rec. Doc. 168 at 79-80]. Plaintiff does not specifically address this argument, but rather states without support that "[T]he defendant acquired title . . . by improper means such as fraud . . . [and] this court cannot sanction and condone the act." [Rec. Doc. 175 ¶ 118]. This broad allegation, which, upon review of plaintiff's Opposition to Summary Judgment and the Court's review of the record, is devoid of any factual support, is insufficient to defeat summary judgment. Plaintiff has set forth no evidence to indicate a genuine issue of fact as to any element of a constructive trust. The Court will grant summary judgment in favor of defendant on plaintiff's constructive trust claim.

### h. Punitive Damages

New York "recogniz[es] 'the availability of punitive damages upon an appropriate showing of morally reprehensible conduct aimed at the general public.'" *Excel Elec. & Photo Corp. v. Aetna Cas. & Sur. Co.*, No. 90 Civ. 6508 (JMC), 1991 WL 259257, at *3 (S.D.N.Y. 1991) (citing *Belco Petroleum Corp. v. AIF Oil Rig, Inc.*, 164 A.D. 2d 583, 588 (1st Dep't 1991)) (collecting cases). However, "New York does not recognize a separate cause of action for punitive damages." *Kurtz v. Lelchuk*, No. 7585-04, 2006 WL 1982598, at *9 (N.Y. Sup. Ct. July 10, 2006). As the Court will grant summary judgment in favor of defendant on all of plaintiff's claims and plaintiff cannot maintain an independent cause of action for punitive damages, the Court must grant summary judgment in defendant's favor on plaintiff's claim for punitive damages.

### i. Counterclaims

Defendant's Motion for Summary Judgment includes, for the first time, a request for unspecified damages, fees, and dismissal of the case based on plaintiff's alleged litigation

17

misconduct. [Rec. Doc. 168 at 90-91]. After reviewing defendant's Answer to Plaintiff's Fifth Amended Complaint [Rec. Doc. 141], defendant attempts to have the Court recognize newly-asserted counterclaims based on plaintiff's alleged misconduct. Defendant did not seek Court approval to amend or add to her previously asserted counterclaims, but merely asserts such counterclaims in her Motion for Summary Judgment. The Court will deny all of defendant's counterclaims, set forth for the first time in her Motion for Summary Judgment, based on plaintiff's alleged litigation misconduct.

**V. CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment [Rec. Doc. 168] will be GRANTED in part and DENIED in part. The Motion will be granted on all of plaintiff's claims: conversion, fraud, unjust enrichment, breach of fiduciary duty, quiet title, reformation, constructive trust, and punitive damages, and each of plaintiff's claims will be dismissed with prejudice. Defendant's counterclaims based on plaintiff's alleged litigation misconduct, asserted for the first time in her Motion for Summary Judgment, will be denied.

The trial on the merits of the only remaining claim to be tried, defendant's counterclaim against plaintiff for "prohibiting defendant from accessing her personal property, and plac[ing] an ADT alarm system on the property," [Def.'s Answer, Rec. Doc. 141 ¶ 36; Def.'s Second Submittal, Rec. Doc. 201 at 3], will commence on August 4, 2014 [Rec. Doc. 216]. The Court will shortly issue an order scheduling a telephone conference with plaintiff's attorney and the pro se defendant to discuss the procedural posture of the case and whether, in light of this Ruling and the Judgment that will follow, the Court has jurisdiction to consider defendant's counterclaim.

## EPILOGUE

As is sometimes the case in the presiding judge's more than 20 years on the bench, the undersigned is not completely satisfied with the result of this ruling as it relates to certain of plaintiff's claims. However, each claim was resolved by the Court based on the law, the parties' filings, and the record, or lack thereof.

**SO ORDERED.**

_____
Tucker L. Melançon
United States District Judge

March 25, 2014
Brooklyn, NY